# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 6478 | **DATE** | 9/27/2001 |
| **CASE TITLE** | JOY SCHEER vs. LARRY G. MASSANARI | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: Plaintiff Joy Scheer's motion for summary judgment [7-1] is denied. This case is hereby terminated.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | Document Number |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | SEP 2 8 2001 date docketed | |
| ✓ | Docketing to mail notices. | | | 13 |
| ✓ | Mail AO 450 form. | | CM docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| TBK | courtroom deputy's initials | 01 SEP 27 PM 5: 11 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

DOCKETED
SEP 2 8 2001

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JOY SCHEER, )
)
Plaintiff, )
)
v. )
) No. 00 C 6478
)
LARRY G. MASSANARI ) Judge Ronald A. Guzman
Acting Commissioner of )
Social Security, )
Defendant. )

## MEMORANDUM OPINION AND ORDER

Plaintiff, Joy Sheer, seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner"). Ms. Scheer applied for DIB and SSI in May 1998, alleging that she became disabled on August 2, 1997, due to left knee and shoulder pain, and fractured ribs (Tr. 50, 77, 217-18). Her applications were denied initially and on reconsideration (Tr. 30, 35, 221, 226). A hearing was held on September 7, 1999, before Administrative Law Judge (ALJ) Helen Cropper (Tr. 235-95). Ms. Scheer testified and was represented by counsel (Tr. 23 7-72). Dr. William Newman, a medical expert, and Michael Komie, Ph.D., a vocational expert, also testified (Tr. 272-95). On September 22, 1998, the ALJ found that Ms. Scheer was not disabled because she could perform her past relevant work (Tr. 14-25). The Appeals Council denied Ms. Scheer's request for review, and the ALJ's decision became the agency's final decision (Tr. 6-7). Pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), Ms. Scheer commenced a civil action for judicial review of the ALJ's decision.

## STATEMENT OF FACTS

Ms. Scheer was born on May 26, 1937 (Tr. 50). She was sixty years old when she allegedly became disabled, and she began receiving Social Security retirement benefits after she turned age sixty-

1

/2

two (Tr. 14, 25). She graduated from high school and completed one year of college (Tr. 81, 242-43). She worked as a secretary and medical transcriber until August 2, 1997, when she was involved in a bus accident (Tr. 81, 111).

**Medical Evidence**

In September 1996, Ms. Scheer went to the Southeastern Medical Center due to left elbow pain (Tr. 127). A doctor diagnosed tendonitis and prescribed physical therapy and an external support (Tr. 127). Two weeks later, Ms. Scheer stated that the physical therapy had helped (Tr. 128). In October 1996, Ms. Scheer stated that her pain had decreased, and an exam revealed that Ms. Scheer's grip strength was sixty-five pounds in each hand (Tr. 129-30, 134). In November 1996, Ms. Scheer had some tenderness and pain with resistive supination of the arm, and some increased sensation over the ulnar nerve, but a normal range of motion, fifty-five pounds of grip strength on the right and forty-five pounds of grip strength on the left (Tr. 133, 135-36).

In February 1997, Ms. Scheer felt better, but still had tenderness over the medial flexor and some slight tenderness over the ulnar nerve (Tr. 139). Likewise, in April 1997, Ms. Scheer had some pain and medial flexor tenderness, but stated that her elbow felt better (Tr. 142). On August 2, 1997, Ms. Scheer fell while getting off a bus (Tr. 149). She had two fractured ribs and left upper back soreness (Tr. 149-50). She was given Tylenol #3 and a rib belt, and her doctor prescribed an exercise program (Tr. 149). On September 16, 1997, x-rays showed "marked" healing of the rib fractures (Tr. 155). The next day, an exam revealed a limited range of shoulder motion, and 4/5 left shoulder strength (Tr. 159, 164, 169). She was doing much better in October 1997 (Tr. 161). By December 1997, she had decreased rib and left shoulder pain (Tr. 145, 147).

In January 1998, Ms. Scheer stated that her shoulder was better (Tr. 174). She did not see her doctor again until May 1998 (Tr. 175). At that time, she had a limited range of shoulder motion and

some tenderness (Tr. 175). She stated that her pain was a level "three" at rest, and a level "five" after work, on a scale of one-to-ten, where ten was the highest level of pain (Tr. 177). Occupational therapy, including heat and exercise, was prescribed (Tr. 175, 177). At the end of May, Ms. Scheer had a limited range of shoulder motion, with 60 pounds of grip strength in her right hand and 40 pounds of grip strength in her left hand (Tr. 178).

In June 1998, Ms. Scheer had a limited range of left shoulder motion, and shoulder strength testing revealed that Ms. Scheer's right shoulder was stronger than her left shoulder (Tr. 189-90, 216). Ms. Scheer saw Dr. Knott at the request of the Illinois Bureau of Disability on July 8, 1998 (Tr. 111). She told Dr. Knott that she started having left shoulder pain in May 1994, and that the pain was aggravated by a bus accident in August 1997 (Tr. 111). She noted that she also injured her knee in the bus accident, but stated that her knee problem had resolved (Tr. 111). On examination, Ms. Scheer had a limited range of left shoulder motion, but normal ranges of motion elsewhere (Tr. 113, 115). She had normal reflexes, sensation and motor function in all extremities (Tr. 113-14). She performed fine and gross manipulation without difficulty, and was able to perform both skilled and dexterous movements (Tr. 113-14). There was no evidence of muscle wasting (Tr. 113). A+1 crepitation was noted on the Right knee joint (Tr. 113). Left shoulder x-rays showed "slight" arthritic sclerosis, suggestive of possible impingement syndrome or a rotator cuff problem (Tr. 116). Left knee x-rays showed medial joint space narrowing and some spurs (Tr. 116). Dr. Knott diagnosed a painful left shoulder and mild osteoarthritis of the right knee (Tr. 114).

On July 17, 1998, Dr. Villaflor reviewed the record and concluded that Ms. Scheer could sit, stand and walk for six hours each per day, and lift up to fifty pounds, but could not lift more than twenty-five pounds to a level higher than her hips (Tr. 118). In addition, the doctor determined that Ms. Scheer had a limited ability to reach, and could only occasionally crawl and climb ladders (Tr. 119-20). In August

3

1998, Ms. Scheer had a followup visit with Dr. Chand. Ms. Scheer continued to complain of pain occasionary in her Left arm. (Tr. 192).

In September 1998, Ms. Scheer saw Dr. Hamilton, a consultative examiner, at the request of the Bureau of Disability Determination Services (Tr. 193). Ms. Scheer told Dr. Hamilton that she could sit for twenty minutes, walk one or two blocks and lift ten-to-twenty pounds (Tr. 194). She lived by herself, and cooked, cleaned, and did the laundry (Tr. 194). On examination, Ms. Scheer had minimally decreased ranges of shoulder motion (1400 out of a possible 1500), and limited ranges of knee motion (Tr. 195, 198). She was able to make a fist, had normal grip strength, and had normal fine manipulation and gross dexterity (Tr. 195-96). Ms. Scheer was able to heel and toe walk, and tandem walk (Tr. 196). There was no evidence of sensory or reflex loss (Tr. 196). Dr. Hamilton diagnosed arthralgias in the shoulders and knees, and found that "the claimant's complaints outweigh her physical findings" (Tr. 197).

In October 1998, Dr. Free reviewed the record, and opined that Ms. Scheer could lift up to twenty pounds; sit, stand and walk for six hours each per workday; occasionally crawl, crouch, kneel, stoop, and climb ladders and ropes; but never climb scaffolds (Tr. 202-03). She also had a limited ability to reach (Tr. 204).

In March 1999, Dr. Chand reported that Ms. Scheer had a limited range of motion in both shoulders, and a limited ability to lift (Tr. 212). He stated that "she should be on disability" (Tr. 212). Dr. Chand stated that "the Department of Public Aid approved her status and she is on public assistance because she is unable to perform the duties of her occupation" (Tr. 213). Ms Scheer returned to see Dr. Chand in September 1999, she had a full range of shoulder motion, but tenderness over the left elbow and decreased sensation in the ulnar nerve (Tr. 211). Dr. Chand diagnosed Ms Scheer with epicondylitis and prescribed Relafen.

## Testimony

During the September 7, 1999 hearing, Ms. Scheer complained of arm, shoulder and knee pain (Tr. 263). Her arms hurt in a specific area, located on the inside of her arm, above her elbow, but below her armpit (Tr. 263-64). She stated that both of her shoulders hurt, but that they hurt more at night than they did during the day, and that her right shoulder hurt more than her left shoulder during the night (Tr. 264-65). She stated that her job involved mostly typing, but that she sometimes lifted files that were quite heavy (Tr. 244, 269). However, she stated that she did not have to file more than two hours a day, and usually lifted only cassette tapes (Tr. 269, 290). She had elbow pain prior to August 2, 1997, but had no trouble working despite the condition (Tr. 246, 260). She stated that she left her job on August 2, 1997 because she was involved in a bus accident in which she fractured her ribs, injured her knees and hurt her left arm (Tr. 247). Ms. Scheer stated that Dr. Chand told her she should not lift more than ten pounds or type (Tr. 248). Ms. Scheer estimated that she could walk for fifteen or twenty minutes, and stand for a few minutes (Tr. 251). She did not have any trouble sitting (Tr. 251).

Dr. Newman, the medical expert, suspected Ms. Scheer had arthritis, but was not certain because no blood tests were performed to confirm the diagnosis (Tr. 276, 281-82, 284). He also noted that there were no clinical exam findings such as swelling and inflammation that are normally present in cases of significant arthritis (Tr. 284-85). He stated that there were some degenerative changes in the left knee, and some "minor" degenerative changes in the left shoulder, but there was "not anything significant functionally to indicate to the degree, anything to compare with her complaints" (Tr. 285). Dr. Newman repeatedly stated that typing would not cause epicondylitis or ulnar neuropathy (Tr. 279, 287). He stated that medial epicondylitis involved the flexor muscles, which were much stronger than the extensor muscles of the arm, and that in order to damage or impact the strong flexor muscles, the individual needed to engage in strenuous activity (Tr. 288). Dr. Newman explained that typing was not strenuous

5

enough to cause medial epicondylitis (Tr. 288). Dr. Newman also explained that typing did not impact the ulnar nerve and, hence, could not cause ulnar neuropathy (Tr. 287). Dr. Newman opined that Ms. Scheer could perform light work (Tr. 280). Dr. Komie, the vocational expert, classified Ms. Scheer's past work as a medical transcriber as sedentary (Tr. 291).

## ARGUMENT

This court's review is limited to determining whether the Secretary's final decision "is both supported by substantial evidence and based on the proper legal criteria." *Erhart v. Secretary of Health & Human Servs.*, 969 F. 2d 534, 538 (7th Cir. 1992). Substantial Evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). In reviewing the Secretary's final decision, the court may not reweigh the evidence or reconsider credibility determinations made by the ALJ. *Herr v. Sullivan*, 912 F. 2d 178, 180 (7th Cir. 1990). Thus, "the critical question here is not whether the claimant is actually disabled, but rather whether substantial evidence supports the ALJ's conclusion that the claimant is not disabled. *Marco v. Apfel*, No. 97 C. 6824, 1999 WL 311695, at *4 (N.D. Ill. May 13, 1999). If reasonable minds could disagree as to whether an individual is disabled, a court must affirm the Secretary's decision. *Books v. Chater*, 91 F. 3d 972, 978 (7th Cir. 1996).

The Social security Act authorizes disability benefits for those who are unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine whether an adult claimant is disabled under the Act, the ALJ must address the following questions in sequential order:

(1) Is the claimant presently unemployed?
(2) Is the claimant's impairment or combination of impairments severe?

6

(3) Do his or her impairments meet or exceed any of the specific impairments listed in 20 C.F.R. Pt. 404, Subpt. P., App. 1 which the Secretary acknowledges to be conclusively disabling?
(4) If the impairment has not been listed by the Secretary as conclusively disabling, given the claimant's residual functional capacity, is the claimant unable to perform his or her past relevant work?
(5) Is the claimant unable to perform any other work in the national economy given his or her age, education and work experience?

20 C.F.R. § 416 .920(a)(f); *Young v. Secretary of Health & Human Servs.*, 957 F. 2d 386, 389 (7th Cir. 1992). "A negative conclusion at any step (except for step three) precludes a finding of disability." *Young*, 957 F. 2d at 389. "An affirmative answer at steps one, two or four leads to the next step. An affirmative answer at steps three or five results in a finding of disability." *Id.* "[P]laintiff has the burden of production and persuasion on steps one through four, and the burden shifts to SSA on step five to show ability to engage in some other type of [word]." *Terry v. Apfel*, No. 97 C. 3369, 1998 WL. 704322, at *1 (N.D. Ill. Sept. 24, 1998).

In Scheer's case, the ALJ found that she was not presently employed (step one) and that she had at least one severe impairment of arthritis (step two). However, the ALJ found that Scheer did not have an impairment or combinations of impairments listed in or medically equal to one listed in 20 C.F.R. Pt. 404, Subpt. P., App. 1 (step three). Next the ALJ found that Scheer had a long relevant work history as a medical transcriber (step four). Finally, the ALJ determined that Scheer had a residual functional capacity ("RFC") to perform a full range of sedentary work (step five), and found that due to her RFC, age, education, and work experience, she was not disabled.

In Scheer's case, the ALJ answered the inquiry at step three in the negative. Therefore, the Court begins its analysis there. There is substantial evidence in the record to support the ALJ's find that Scheer's conditions did not meet or exceed the specific impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. The Court addresses Scheer's shoulder periarthritis condition and her chronic medial epicondylitis condition.

7

There are three categories of impairments of the musculoskeletal system that the Secretary has listed as conclusively disabling: (1) Active rheumatoid arthritis and other inflammatory arthritis; arthritis of a major weight-bearing joint and arthritis of one major joint in each of the upper extremities (due to any cause). In order to qualify as having "active rheumatoid arthritis and other inflammatory arthritis" under section 1.02, a claimant must show, among other things, a [h]istory of persistent joint pain, swelling tenderness involving multiple major joints (see 1.00D) and with signs of joint inflammation (swelling and tenderness) on current physical examination despite prescribed therapy for at least three months, resulting in significant restriction of function of the affected joints, and clinical activity expected to last at least 12 months; and corroboration of the diagnosis at some point in time by either positive serologic test for rheumatoid factor or antinuclear antibodies; or elevated sedimentation rate; or characteristic histologic changes in biopsy of synovial membrane or subcutaneous nodule (obtained independent of Social Security disability evaluation). *See* 20 C.F.R. Pt. 404, Subpt. P., App. 1 §102. The arthritis of one major joint in the each of the upper extremities (due to any cause) requires abduction and forward flexion (elevation) of both arms at the shoulders, including scapular motion, restricted to less than 90 degrees; or gross anatomical deformity (e.g. subluxation, contracture, bony or fibrous ankylosis, instability or effusion of the affected joints). A history of persistent joint pain and stiffness with signs of marked limitation of motion or abnormal motion of the affected joints on current gross physical examination is also required. *See* 20 C.F.R. Pt. 404, Subpt. P., App. 1 § 1.04.

With regard to Scheer's alleged epicondylitis condition Section 1.13 require[s] a series of staged surgical procedures within 12 months after onset for salvage and/or restoration of major function of the extremity, and such major function was not restored or expected to be restored within 12 months after onset. *See* 20 C.F.R. Pt. 404, Subpt. P., App. 1 § 1.13. The Court addresses Ms. Scheer's arthritic condition first.

8

While it is undisputed that Ms. Scheer has a history or persistent joint pain, swelling, and tenderness involving multiple major joints it is also undisputed that the objective medical evidence required to corroborate the degree of severity of this condition is absent from the record. Dr. Newman, a consultative examiner, testified that there were some degenerative changes in Scheer's left knee, and some "minor" degenerative changes in her left shoulder, but there was "not anything significant functionally to indicate the degree [of arthritis] or anything to compare with her complaints" (Tr. 285). Dr. Newman opined that Ms. Scheer could perform light work (Tr.280). Likewise, Dr. Hamilton, who examined Ms. Scheer, concluded that "the claimant's complaints outweigh her physical findings" (Tr. 197) and that Ms. Scheer had minimally decreased ranges of shoulder motion (140· out of a possible 150·), and limited ranges of knee motion (Tr. 195, 198). Dr. Free, who reviewed the record only, found that Ms. Scheer could lift up to twenty pounds; sit, stand and walk for six hours each per workday; occasionally crawl, crouch, kneel, stoop, and climb ladders and ropes; but had a limited ability to reach (Tr. 202-04). In addition, Dr. Villaflor reviewed the record and opined that Ms. Scheer could sit, stand and walk for six hours each per day and lift up to fifty pounds, but could not lift more than twenty-five pounds to a level higher than her hips (Tr. 118). He also concluded that Ms. Scheer had a limited ability to reach, and could only occasionally crawl and climb ladders (Tr. 1 19~20).[1] There is no documented presence of antinuclear antibodies, elevated sedimentation rate, subcontanous nodules, gross anatomical deformities, or x-ray evidence of significant space narrowing or bone destruction.

Relying on Carver v. Harris, 634 F.2d 363 (7th Cir. 1980), Ms. Scheer argues that the opinion of a treating physician is "entitled to greater weight than those of state agency physicians who had never examined the Claimant." Memorandum Brief (Plaintiffs Brief) at 11. However, Carver is a long-outdated

---

[1] The ALJ disregarded Dr. Villaflor's testimony in reaching her decision.

9

case, and her reliance on it is misplaced. Carver significantly predates the regulations and Social Security Rulings concerning the weight to be given to physician opinions. See 20 C.F.R. §§ 404.1527 et. sec., 416.927 et seq.; Social Security Ruling (SSR) 96-2p; SSR 96-5p; SSR 96-6p. The current regulations, published in 1991, and amended in 1997, provide that the agency will consider all physician opinions of record, and that the weight to be accorded any particular opinion depends on a variety of factors set forth at 20 C.F.R. §§ 404.1527(d)-(f). Id. The Social Security Rulings, published in 1996, further explain the regulations. Pursuant to the regulations and Rulings, a physician's opinion, including that of a non-examining physician, may be entitled to significant weight if it is supported by the medical evidence and is consistent with the other evidence of record. 20 C.F.R. §§ 404.1527(d), (f), 416.927(d), (f); SSR's 96-2p; 96-5p; 96-6p.

In the instant case, Dr. Newman's opinion was supported by the medical findings, and was consistent with the statements and conclusions drawn by the other doctors. Specifically, as noted by Dr. Newman, there were some degenerative changes in Ms. Scheer's left knee, and some "minor" degenerative changes in her left shoulder, but there was "not anything significant functionally to indicate to the degree, anything to compare with her complaints" (Tr. 285). Dr. Hamilton, who thoroughly examined Ms. Scheer, similarly concluded that "the claimant's complaints outweigh her physical findings" (Tr. 197). The conclusions drawn by Drs. Newman and Hamilton were supported by the exam findings of record. Dr. Hamilton's exam revealed that Ms. Scheer had a limited range of shoulder motion, but she was able to make a fist, and had normal grip strength, normal fine manipulation and normal gross dexterity (Tr. 195-96). Likewise, Dr. Knott examined Ms. Scheer, and found that she had a limited range of shoulder motion, but normal motor function in all extremities (Tr. 113-14). She performed fine and gross manipulation without difficulty, and was able to perform both skilled and

10

dexterous movements (Tr. 113-14). Moreover, both Dr. Knott and Dr. Hamilton found that there was no evidence of reflex, motor or sensory loss (Tr. 113-14, 196). And, Ms. Scheer told Dr. Knott that her knee problem had resolved (Tr. 111). Thus, the opinions of Drs. Newman, Hamilton, Free and Villaflor were supported by the record. As such, the opinions of these physicians could be given significant weight. 20 C.F.R. §§ 404.1527d), (f), 416.927(d), (f); SSRs 96-2p; 96-Sp; 96-6p; *Limberopoulos v. Shalala*, 17 F.3d 975, 978 (7th Cir. 1994).

Ms. Scheer argues that the ALJ should have given the most weight to the opinion of Dr. Chand, her treating physician. Plaintiffs Brief at 14. Dr. Chand opined that Ms. Scheer "should be on disability" (Tr. 212). However, this opinion did not identify any of Ms. Scheer's abilities or limitations. Dr. Chand noted that Ms. Scheer had a limited range of shoulder motion, and would have difficulty lifting weights (Tr. 212). However, Dr. Chand did not indicate whether the limited range of shoulder motion caused any functional restrictions. In addition, Dr. Chand did not specify how much weight Ms. Scheer could lift (Tr. 212). To be sure the computerized mechanical isometric muscle test revealed inconsistent effort during adduction and external rotation of Ms. Scheer's left shoulder but this test is unclear as to the significance of such. Thus, Dr. Chand's opinion that Ms. Scheer should be on disability is not supported by any objective medical evidence and provides little useful information. Moreover, the ALJ imposed a ten-pound lifting limitation, and found that Ms. Scheer could not engage in repetitive, overhead lifting or reaching (Tr. 24). These restrictions accommodated Ms. Scheer's problems with lifting and shoulder movement, and were consistent with the opinion of Dr. Newman, and the detailed opinions of Drs. Free and Villaflor.

Furthermore, there is substantial evidence in the record that Ms. Scheer's elbow condition does not qualify under section 1.13 soft tissue injuries of an upper or lower extremity. Ms. Scheer claims that

11

the ALJ ignored Dr. Chand's diagnoses of medial epicondylitis (tennis elbow). Plaintiff's Brief at 11. This is untrue. The ALJ found that Ms. Scheer had arthritis and tendonitis, but that these conditions were not of a disabling severity (Tr. 17). Indeed, a mere diagnosis, by itself, is not disabling. *Higgs v. Bowen*, 880 F.2d 860, 863(6th Cir. 1988) ("mere diagnosis of arthritis says nothing about the severity of the condition."). Once again it is undisputed that the objective medical evidence supporting this epicondylitis condition is absent from the record. Ms. Scheer has not had a series of staged surgical procedures within 12 months after onset for salvage and/or restoration of major function of the extremity.

Ms. Scheer argues that she cannot perform her past work because she cannot type. Plaintiffs Brief at 11-15. However, the record does not support this claim. The physical exam findings did not show that Ms. Scheer had any problems that prevented her from typing. As previously discussed, Dr. Hamilton's exam revealed that Ms. Scheer had a limited range of shoulder motion, but she was able to make a fist, and had normal grip strength, normal fine manipulation and normal gross dexterity (Tr. 195-96). Likewise, Dr. Knott examined Ms. Scheer, and found that she had a limited range of shoulder motion, but normal motor function in all extremities (Tr. 113-14). She performed fine and gross manipulation without difficulty, and was able to perform both skilled and dexterous movements (Tr. 113-14). Moreover, both Dr. Knott and Dr. Hamilton found that there was no evidence of reflex, motor or sensory loss (Tr. 113-14, 196). In fact, no doctor reported that Ms. Scheer had any problems with fine manipulation, fingering, feeling, or gross dexterity. Since Ms. Scheer retained normal abilities to perform fine manipulation, fingering, feeling, and gross dexterity, and had no motor loss or muscle wasting in her hands or fingers, the record failed to support Ms. Scheer's claim that she was unable to type.

Ms. Scheer takes issue with Dr. Newman's testimony that epicondylitis and ulnar neuropathy are not caused by typing. In fact, she characterizes his testimony as "disturbing" and "hogwash." Plaintiffs

Brief at 12-13. In support of her argument, Ms. Scheer cites excerpts from 1A Roscoe N. Gray, M.D., *Attorney Textbook of Medicine*, § 4.72. However, as stated in *Gray's*, epicondylitis (i.e., tennis elbow) is caused by "too frequent repetition of intensive muscular activity involving strong hand grasps or dorsiflexion (backward bending) of the wrist." Plaintiffs Brief at 12, citing *Gray's*, § 4.72 (emphasis added). Thus, according to <u>Gray's</u>, epicondylitis is caused by intense, strong gripping or intense, strong wrist dorsiflexion. Such activities are not involved in typing. Typing requires fingering, not gripping or grasping. And typing involves mainly wrist extension (bending the wrist downward) or holding the wrist straight out, not <u>intense, strong</u> backward bending as is required with a tennis backhand (hence the term "tennis elbow"). In short, typing primarily involves the fingers, with some added mild wrist use, but does not involve the type of strong, intense pull that is required to cause epicondylitis. See *Gray, supra*.

Importantly, *Gray* corroborated Dr. Newman's testimony. Dr. Newman testified that typing would not cause either (1) epicondylitis or (2) ulnar neuropathy (Tr. 279, 286-288). He explained that medial epicondylitis involved the flexor muscles, which were much stronger than the extensor muscles of the arm, and that in order to damage or impact the strong flexor muscles, the individual needed to engage in strenuous activity (Tr. 286, 288). Dr. Newman explained that typing was not strenuous enough to cause medial epicondylitis (Tr. 286, 288). Dr. Newman further explained that typing did not impact the ulnar nerve and, hence could not cause ulnar neuropathy (Tr. 287).

With regard to the ulnar neuropathy, Ms. Scheer cites a portion of <u>Gray's</u> which states that "[t]he nerve may be injured by occupational activities." Plaintiffs Brief at 14. This is true. However, Ms. Scheer does not identify what kind of occupational activities could cause the problem. Dr. Newman testified that typing is not the kind of occupational activity that would cause ulnar neuropathy (Tr. 287). Indeed, he stated that "[t]yping has nothing to do with" the ulnar nerve (Tr. 287). There is no evidence to

13

contradict this testimony.

Ms. Scheer also attempts to discredit Dr. Newman by claiming that he "did not know if Claimant suffered from medial epicondylitis" and "vacillated back and forth about what type of conditions the Claimant suffers from." Plaintiffs Brief at 5, 12. Again, Ms. Scheer misunderstood Dr. Newman's testimony. Dr. Newman noted that the typical cause of epicondylitis (pitching) was not present in the case at bar (Tr. 279). And he noted that Ms. Scheer's epicondylitis was transient, in that it switched from one arm to the other, and then improved (i.e., disappeared), and then recurred (Tr. 278-79). He did not, however, state that he was unsure if she suffered from epicondylitis versus some other condition. Rather, given that Ms. Scheer stated it improved or was resolved, Dr. Newman was unsure whether she had <u>any</u> condition during the period before the epicondylitis flared up again (Tr. 278-79). Dr. Newman explained that he suspected that Ms. Scheer had rheumatoid arthritis in her shoulder, but could not be sure of the diagnosis or of its severity, because none of the objective findings that are usually present in arthritis cases (such as swelling, inflammation, positive rheumatoid factor blood test) were present in Ms. Scheer's case (Tr. 279-82, 284-85). This line of testimony, however, was not related to the epicondylitis or ulnar neuropathy. Dr. Newman provided certain, strong, repeated opinions regarding the epicondylitis and the ulnar neuropathy.

Having found that the ALJ's finding at step three is supported by substantial evidence, the Court continues to step four. The ALJ determined that Scheer had a RFC to perform the full range of sedentary work. "Sedentary work involves primarily sitting and minimal lifting." *Edwards v. Sullivan*, 985 F. 2d 334, 339 (7th Cir. 1993); *see* 20 C.F.R. §§ 404.1567(a), 416.967. "[A] claimant can do sedentary work if he can (1) sit up, (2) do occasional lifting of objects weighing up to ten pounds, and (3) occasionally walk or stand." *Kapusta v. Sullivan*, 900 F. 2d 94, 96 (7th Cir. 1989). "for a claimant to be considered not

disabled, he must be able to perform sedentary work 'for more than a brief period.'" *Husbands v. Chater*, No. 94 C 5280, 1996 WL 153879, at *3 (N.D. Ill. Apr. 1, 1996(quoting *Rousey v. Heckler*, 771 F. 2d 1065, 1071 (7th Cir. 1985)). The physical exam findings did not show that Ms. Scheer had any problems that prevented her from typing and she was capable of lifting up to ten pounds. As previously discussed, Dr. Hamilton's exam revealed that Ms. Scheer was capable of engaging in sedentary work and had a limited range of shoulder motion, but she was able to make a fist, and had normal grip strength, normal fine manipulation and normal gross dexterity (Tr. 195-96). Likewise, Dr. Knott examined Ms. Scheer, and found that she had a limited range of shoulder motion, but normal motor function in all extremities (Tr. 113-14). She performed fine and gross manipulation without difficulty, and was able to perform both skilled and dexterous movements (Tr. 113-14). Moreover, both Dr. Knott and Dr. Hamilton found that there was no evidence of reflex, motor or sensory loss (Tr. 113-14, 196). In fact, no doctor reported that Ms. Scheer had any problems with fine manipulation, fingering, feeling, or gross dexterity. Since Ms. Scheer retained normal abilities to perform fine manipulation, fingering, feeling, and gross dexterity, and had no motor loss or muscle wasting in her hands or fingers, the record failed to support Ms. Scheer's claim that she was unable to type.

Once the claimant establishes her RFC, the ALJ compares the RFC to the requirements of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). Past relevant work includes the claimant's job as she performed it, and her job as it is usually performed in the national economy. SSR 82-62; SSR 82-61. In the case at bar, Dr. Komie, the vocational expert, testified that Ms. Scheer's job as a medical transcriber was sedentary work as it is usually performed in the national economy (Tr. 291). Given Ms. Scheer's RFC, the ALJ reasonably found that Ms. Scheer could perform her past relevant work as it was usually performed in the national economy.

Ms. Scheer claims that the vocational expert testified that Ms. Scheer's past work "is not transferable to other jobs." Plaintiffs Brief at 10. However, Ms. Scheer misinterpreted the vocational expert's testimony. Dr. Komie testified that Ms. Scheer had skills that were of limited transferability and that her skills would transfer to similar jobs (Tr. 291). He did not, however, state that she had no transferable skills. Finally, it cannot be concluded that the ALJ erred when she failed to consider Ms. Scheer's advanced age. The ALJ discussed Ms. Sheer's advanced age and acknowledged such. Ms. Scheer's impairments do not require that she embark on a new career where the advanced age element becomes significant or where the grid would be applied.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for summary judgment is denied. (#7) This case is hereby terminated.

SO ORDERED 9/27/01

Ronald A. Guzman
United States Judge